Browder *v.* St. Louis Southwestern Railway Company.

5-14                                                 256 S. W. 2d 333

Opinion delivered March 16, 1953.

Rehearing denied April 20, 1953.

*Joseph Morrison,* for appellant.

*Barrett, Wheatley, Smith & Deacon,* for appellee.

Griffin Smith, Chief Justice.    Appellant was injured and his truck damaged when he undertook to cross St. Louis Southwestern Railway Company tracks in front of a mainline passenger train.

A "blinker" warning is maintained at the Main Street crossing in Stuttgart where the collision occurred. It was alleged that the railway company failed to operate the electrically-controlled flashlight system in such

manner as to warn the plaintiff of an approaching train in sufficient time; that the company negligently failed to sound the locomotive whistle or ring the bell; that in passing through Stuttgart a local ordinance limiting the speed of trains to 20 miles per hour was violated; that the plaintiff was familiar with the flashlight system and depended upon it, to his injury. The demand was for $25,000 to compensate personal injuries and $1,475 for truck damage. From a jury verdict and the court's judgment in favor of the defendant Browder has appealed.

Although there was no specific allegation of discovered peril, testimony was introduced from which the jury could have drawn an inference, hence the complaint will be treated as having been amended.

Appellant's contentions he says are decisive go to alleged errors in instructions given or refused. It is argued that physical facts, (as disclosed by a chart used when the appeal was orally presented) when considered in connection with undisputed distances and the existence of a building it is claimed must have partially obstructed Browder's view to his left whence the train came, are so clearly contrary to the jury's findings as to negative fair consideration, revealing a verdict unsupported by substantial evidence. A careful examination of the record, however, shows that all essentials were disputed in circumstances where the fact-finders had a right to consider the interest, preferences, prejudices, and credibility of those who testified.

It is not contended that the blinker system was out of order. On the contrary appellant's position is that because the accident happened as it did the contact mechanism which starts the flashlights must have been installed so near the crossing that one approaching the tracks did not have sufficient clearance after the warning was given. Excessive speed of the train is emphasized by testimony that the truck was carried about 200 feet and that the train did not stop within the distance operatives testified that it could be halted through use

of the emergency brakes if the speed had not been in excess of 20 miles per hour.

It is accepted law that violation of a safety measure is not negligence *per se,* but only evidence of negligence. *Duckworth* v. *Stephens,* 182 Ark. 161, 30 S. W. 2d 840, cited in *Missouri-Pacific Railroad Co.* v. *Dalby,* 199 Ark. 49, 132 S. W. 2d 646.

Whether the traffic signal was sufficiently "spaced," in point of automatic contact with the engine which brought it into play, went to the jury on testimony of a witness who saw the lights flashing, but crossed ahead of the train. He looked back and noticed that Browder was attempting to cross, and felt that he would be hit.

It is earnestly insisted that prejudice to the plaintiff resulted from the court's failure to give certain instructions—particularly No's 5, 3, and one that bore no number.

The unnumbered instruction would have told the jury that the railroad company was under a duty not to wilfully and wantonly injure a person on its tracks after the peril had been discovered, or after it should have been discovered through exercise of reasonable care. There was no evidence of wilful or wanton negligence and the instruction was properly refused.

Plaintiff's requested Instruction No. 5 required train operatives to maintain a lookout for persons and property on the railway; declared the law to be that if through failure to keep such lookout a person should be killed or injured, or property damaged, the company would be liable, ". . . notwithstanding the contributory negligence of the person injured, where if such lookout had been kept [such operatives] could have discovered the peril of the person so injured in time to have prevented the injury by the exercise of reasonable care after discovery of such peril, and the burden of proving shall devolve upon said railroad to establish the fact that this duty to keep such lookout has been per-

formed." Only a general objection was made to the court's refusal to give this instruction.

Plaintiff's Instruction No. 6 told the jury that the burden of proving contributory negligence was upon the railway company, ". . . and if you find that the . . . defendant . . . has failed to prove by a preponderance of the evidence . . . that the plaintiff was guilty of contributory negligence, *then you will find for the plaintiff on the question of contributory negligence.*"

This instruction, it will be noted, served two purposes: It told the jury that the burden was upon the railway company to establish the plaintiff's contributory negligence; and it also directed a finding in the plaintiff's favor on the single issue of contributory negligence unless the defendant had produced preponderating evidence that the plaintiff was guilty of such negligence; and, furthermore, the instruction was "binding" on that issue.

Now turning to Instruction No. 10, given at the defendant's request, we find this language: "If you find that as plaintiff approached the crossing the signal lights were working, or that a warning was given by the blowing of the whistle or the ringing of the bell on the engine, and that if plaintiff had looked he could have seen the approaching train and could have stopped his truck in time to have avoided the collision, and that he failed to exercise such care and caution, *your verdict must be for the defendant.*"

This, of course, was a binding instruction and, on the issue of negligence, it does not take into account the degree of defendant's negligence, discovered peril, speed of the train, etc.

We have held that a so-called binding instruction that omits an essential element is not cured by giving correct instructions dealing with the phase in controversy. *Missouri Pacific Railroad Co.* v. *Burks,* 196 Ark. 1104, 121 S. W. 2d 65. But in *Hearn* v. *East Texas Motor Freight Lines,* 219 Ark. 297, 241 S. W. 2d 259, it was

said that instructions must be considered as a whole, and if, when so considered, the legal issues presented are properly explained, no prejudice results.

In the Hearn case a binding instruction dealt with violation of a safety statute. The appellant insisted that the direction, *"and if you find that the plaintiff was guilty of any negligence, however slight, your verdict must be for the defendant,"* omitted an element essential to a proper statement of the rule of contributory negligence—that to defeat recovery the claimant's negligence must have caused or contributed, in some degree, to his own injury.

The opinion continues with the statement that contributory negligence was succinctly defined *in a previous instruction*, for "after digressing from this particular definition only momentarily, and without material deviation from the related issues, the court gave Instruction No. 5 [the one complained of]. This was followed immediately by further admonition which defined ordinary care and connected it with the facts in issue. . . . We conclude, therefore, that failure to fully redefine contributory negligence in appellee's Instruction No. 5 was not error."

In the case at bar we have a somewhat stronger case in that appellant himself had been given a binding instruction dealing with contributory negligence in which he omitted any mention of the defendant's degree of care. The Hearn case is cited in *Kendrick* v. *Rankin*, 219 Ark. 736, 244 S. W. 2d 495, where the facts were different.

There was no error in refusing Instruction No. 3, offered by the plaintiff. Its substance was covered by defendant's Instruction No. 8. Other errors are commented on, but we are unable to say that any was prejudicial, hence the judgment must be affirmed.

GEORGE ROSE SMITH, J., dissenting. I think the giving of Instruction No. 10 was error, for it is a binding charge which entirely ignores the doctrine of comparative negligence. Under this instruction the jury were directed to find for the defendant if the plaintiff could have seen the train in time to stop, without regard to the possibility that the negligence of the train crew might have exceeded that of the plaintiff.

We did not go that far in the *Hearn* case, cited by the majority. There the questioned instruction mentioned the defense of contributory negligence but did not restate in detail all the elements of that defense, those matters having been covered in other instructions. Our premise was that "where a binding instruction is given which *ignores* an essential issue on which evidence conflicts, reversible error is committed, even though a separate instruction correctly defines such issue." But, since the issue of contributory negligence was not ignored in that case, we held that in view of the instructions as a whole "failure to fully redefine contributory negligence in appellee's Instruction 5 was not error." The difference is that here Instruction No. 10 completely disregarded the rule of comparative negligence, and by the express language of the *Hearn* opinion reversible error was committed.

ROBINSON, J., joins in this dissent.