Wayne DANIEL *v.* Fred QUICK and Carolyn
QUICK, His Wife

CA 80-169                                    606 S.W. 2d 81

Court of Appeals of Arkansas
Opinion delivered October 1, 1980

*Sam Ed Gibson, P.A.*, for appellant.

*Howell & Price, P.A.*, by: *William H. Trice, III*, for appellees.

GEORGE HOWARD, JR., Judge. Appellant, a vendor-builder, appeals from a general jury verdict of $6,500.00 in behalf of appellees, purchasers, for defective workmanship in a dwelling house sold to appellees.

Appellant asserts the following grounds for reversal:

1. The trial court erred in denying appellant's motion to dismiss and then submitting the case to the jury on the theory of express warranty.

2. The trial court erred in denying the appellant's motion to dismiss and then submitting the case to the jury on the theory of implied warranty.

3. The trial court erred in denying the defendant's motion to dismiss and then submitting the case to the jury on the theory of negligence.

4. The award of damages in this case is clearly erroneous.

The thrust of appellant's argument that the trial court

erred in submitting the case to the jury on the theory of express warranty may be summarized as:

That there is no testimony in the record of any express warranty made by the appellant and that if any express warranties are present, they were created by the language in appellees' exhibit 2, a form which describes the materials to be used in the construction, and exhibit 1, a standard offer and acceptance form, which contains a stipulation that the purchasers having inspected the property are not relying upon any warranties, representations or statements made by the seller. In any event, argues appellant, appellant substantially complied with the contract, which is all that is required, and appellees have no room to complain. However, appellant further argues, that "the maximum verdict supportable by the evidence on the theory of express warranty is $500.00" for appellant's failure to select the paint that had been designated for the bathrooms; and that "appellant recognizes this to be a point submitted and turning on the credibility of witness."

It is apparent that appellant ultimately concedes that the court was justified in submitting the case to the jury on the theory of an express warranty.[1]

We are persuaded that the rule announced by the Supreme Court in *Wawak* v. *Stewart*, 247 Ark. 1093, 449 S.W. 2d 922 (1970) that an implied warranty of fitness exists in the sale of a new house by seller who is also the builder is dispositive of the issue in this case. See also: *Coney* v. *Stewart*, 263 Ark. 148, 562 S.W. 2d 619 (1978).

While appellant recognizes the rule in *Wawak*, appellant seeks to avoid the impact of the rule by arguing that the appellees supplied a set of plans to the contractor, the parties entered into a contract before construction commenced, and that the purchasers were present at the job site on a regular basis; and that this case is unlike a situation where the contractor constructs a structure from his own plans and offers a finished product for sale to the general public. We hold that there is no material difference between the arrangements here

---

[1] Whether appellees could pursue simultaneously the theory of an express warranty and an implied warranty as to fitness is not before us. See: *Carter* v. *Quick*, 263 Ark. 202, 563 S.W. 2d 461 (1978).

and those in *Wawak* and *Coney* so as to justify the designation of appellant as something other than a builder-vendor and thus avoid the application of an implied warranty.

In the instant case, an offer and acceptance was executed by the parties which simply provides that appellant offers to sell "Lot 114 Ramble Estates" to appellees for $41,000.00, payable in two installments: $11,500.00 upon the execution of the offer and acceptance, and the balance of $29,500.00 upon completion of the structure. It is plain that appellees simply submitted to appellant a rough draft of the structure that they desired; and from this draft, appellant drew the official and final plans for the structure. While it appears that appellees made periodic trips to the construction site, the evidence does not reflect that their visits in any way interfered with appellant's exclusive control and supervision over the project. It seems clear that appellees were simply observing or monitoring the progress of the job.

Upon the payment of the final installment by appellees, appellant permitted appellees to occupy a finished product which carried with it an implied warranty of fitness and habitation. *Wawak* v. *Stewart*, supra; *Coney* v. *Stewart*, supra. Nor are we persuaded that appellees waived any rights to complain about the defects — failure to use "Don-A-Fill" before the foundation was laid, failure to use washable paint in the bathrooms, faulty door frames, leaks in the shower causing flooding in the bedroom, improper installation of formica tops, failure to install flashing on a roof line overlap, crack in the patio, warped ceiling and a broken step on a porch — for it is plain that when these defects were brought to the attention of the appellant, appellant assured the appellees that the defects would be corrected.

In *Carter* v. *Quick*, 263 Ark. 202, 563 S.W. 2d 461 (1978), Justice Fogleman, speaking for the Supreme Court said:

"Waiver of defects is a question of fact to be determined from the circumstances of the case . . . .

". . . Payment and occupancy together without more is not a waiver as a matter of law . . . ."

Appellant argues that the trial court erred in submitting the case to the jury on the theory of negligence inasmuch as there is no proof in the record from which the jury might have found actionable negligence.

It is settled law that a trial court has a duty to instruct the jury on all material issues presented by the pleadings and evidence. *Western Coal & Mining Co.* v. *Harrison*, 122 Ark. 125, 182 S.W. 525 (1916). In addition, where a case is tried on several theories, the jury should be instructed on all of them when the evidence so warrants. *Western Coal & Mining Co.* v. *Moore*, 96 Ark. 206, 131 S.W. 960 (1910).

In addition to relying upon breach of express warranty and implied warranty as a basis for relief, appellees alleged, in the alternative, in their complaint:

> In the alternative, the plaintiffs state that defendant was negligent in that he:
>
> 1. Failed to exercise ordinary care in the supervision of the construction of the residence of the plaintiffs.
>
> 2. Failed to exercise ordinary care to select and employ competent workmen to perform the work necessary to construct plaintiff's residence.
>
> 3. Failed to exercise ordinary care to be sure the plaintiffs' residence was constructed in accordance with the contract and with sound workmanship and proper construction practices and that said construction was to be done with proper materials as described in the description of materials.[2]

Appellee's expert witness, James Mackey, a remodeling contractor, testified that it would take approximately $8,-000.00 to correct the defects in appellees' dwelling house; that while building contractors do make mistakes which are

---

[2] In *Dixon* v. *Ledbetter*, 262 Ark. 758, 561 S.W. 2d 294 (1978), the Supreme Court emphasized that a building contractor must use reasonable judgment in his construction activities and may be expected to give warning to the owner if he is aware of any possible defects.

regarded as minor and are acceptable to a degree, the defects or mistakes in appellees' structure are not the type of mistakes that fall within the acceptable "category at all." Moreover, he emphasized, when asked if any of the defects are acceptable, "no, none of them, I don't think, in my opinion."

The trial court gave plaintiff's requested instruction number 6 which set out the material issues presented and the theories relied upon by appellees in their pleadings, including appellees' theory of negligence, for relief. The appellant specifically objected to appellees' instruction number 6 by stating "[T]he giving of the words in the second paragraph thereof 'and is fit for human habitation at the time that he sells it.' " Appellant raises for the first time on appeal his claim that the evidence was insufficient to warrant an instruction to the jury on the theory of negligence. Even if appellant's argument were meritorious, we would be precluded from entertaining this argument because it was not asserted below. Moreover, appellant did not abstract the instruction complained of and it is clear that an appellate court will not explore the transcript for alleged errors. *St. Louis, Iron Mountain & Southern Railway Company* v. *Evans*, 80 Ark. 19, 96 S.W. 616 (1906).

Finally, appellant claims that the award of damages in this case is clearly erroneous in that the proper measure of damages should have been the difference in value rather than the cost involved in repairing the defects. We do not agree.

Appellee's expert witness testified that it would take $8,-000.00 to repair the defects in appellees' house. The jury determined that appellees' were entitled to $6,500.00. The total cost of the house was $41,000.00 and appellees' recovery represents only 16% of the cost.

In *Carter* v. *Quick*, supra, the Supreme Court emphasized that the cost of correcting defects, rather than the difference in value, is the proper measure of damages when the correction would not involve unreasonable destruction of the work; and the cost of repairs would not be grossly disproportionate to the results to be obtained. Moreover, the Supreme Court

suggested the question whether the repairs would result in disproportionate economic waste, thus making the "costs" measure inapplicable, was one of fact.

Affirmed.