Hugh J. TAYLOR, d/b/a TAYLOR BUILDING ASSOCIATES and AMERICAN FIDELITY FIRE INSURANCE COMPANY *v.* GREEN MEMORIAL BAPTIST CHURCH et al

CA 81-309                                   633 S.W.2d 48

Court of Appeals of Arkansas
Opinion delivered May 19, 1982

102

*Hardin, Grace, Downing, Napper, Allen & East,* by: *Jack East, III,* for appellants.

*Patten, Brown & Leslie,* by: *Charles A. Brown,* for appellees.

TOM GLAZE, Judge. This appeal and cross-appeal arise out of a construction contract executed by appellant, Taylor Building Associates (Taylor), and appellee, Green Memorial Baptist Church (Green Memorial). The contract was for the remodeling of and addition to the church building owned by Green Memorial. The parties signed the contract on February 23, 1978, and appellant, American Fidelity Fire Insurance Company (American Fidelity), bonded payment for the prompt, full performance of Taylor. Under the contract, Taylor was to complete his work by June 30, 1978, but failed to do so. He continued on the job after the June 30 date, but on or about November 6, 1978, Green Memorial declared Taylor in default and demanded that American Fidelity complete the performance of the project. American Fidelity caused the work to be finished, but the certificate of substantial completion was not executed by the architect in charge of the project until January 4, 1979, more than six

months after the June 30, 1978, date to which Taylor had agreed originally.

In June, 1979, Taylor filed suit against Green Memorial, alleging it had breached the parties' contract by failing to pay Taylor under the terms of their agreement. Green Memorial answered and counterclaimed, alleging Taylor breached their contract, and, among other things, Green Memorial claimed it had incurred interest damages due to Taylor's failure to complete the job by the June 30 date called for by the contract. Green Memorial also joined American Fidelity as a party by filing a cross-complaint.

At trial, the jury returned a verdict in favor of Taylor and American Fidelity in the sum of $6,313.03. The jury additionally awarded Green Memorial $6,401.74 on its counterclaim and cross-complaint. The award to Green Memorial included $2,500 interest damages the jury concluded was incurred by the church due to the delay in the completion of the project caused by Taylor.

On direct appeal, Taylor challenges the award of interest damages to Green Memorial, contending there was no substantial evidence from which the jury could have ascertained an amount of such damages. On cross-appeal, Green Memorial argues the amount of damages it was awarded by the jury was inadequate as a matter of law. We reject the arguments made by the parties in their respective appeals, and, therefore, affirm the verdicts awarded by the jury in each instance.

First, we consider Taylor's multifaceted argument that Green Memorial failed to meet its burden of proving interest damages. Taylor argues that Green Memorial authorized a change order for added work on July 5, 1978, and thereby extended the agreed completion date of June 30. Thus, at the least, Taylor contends this July 5 change order imposed upon the church the burden of proving the change order did not delay substantial completion as of June 30, 1978. Next, Taylor urges that there is sufficient evidence in the record which shows that the project was actually completed by it well before January 4, 1979, the date the architect actually

certified substantial completion. In sum, Taylor claims that Green Memorial failed to offer evidence that Taylor caused any delay (since the July change order was approved by Green Memorial) and that it failed to show January 4, 1979, was the date of completion.

Admittedly, the record substantiates that part of Taylor's argument that Green Memorial agreed to an extended completion date since it approved the July 5 change order. However, there was no evidence presented by any of the parties which indicated that the delay in performing the contract should have lasted until January 4, 1979. In fact, the architect testified that the added work required by the change order might have extended the work on the project, but it should have been completed at least by August 1, 1978. From the evidence, we believe it is clear that Green Memorial extended the original completion date established by the parties' contract, but we also find that a factual issue was presented to the jury to determine how long it would take for Taylor to finish the work called for by the change order authorized by Green Memorial.

Once the jury decided the date on which the project should have been completed, it then was required to calculate the amount of interest Green Memorial paid on its interim loan until the date Green Memorial commenced paying interest on its permanent loan, *i.e.*, the date the project was finally completed. Without reciting all the evidence in the record before us, we find substantial proof introduced at trial to support several different, possible dates from which the jury could have computed interest damages. One example may be derived from the testimony of the project's architect who concluded that Taylor could have completed the project on or before August 1, 1978. If the jury had so surmised, the record would further have substantiated a jury finding that Green Memorial's interim financing was extended from August 1, 1978, to January 4, 1979, the date the architect designated as the substantial completion date for the project. Thus, although we believe there are other dates and time frames the jury could have considered from the evidence when calculating interest damages, the August 1 to January 4 period is one illustration, based on the

evidence, that we know could support the jury verdict of $2,500.

We suggest the real problem that prompted this appeal was Green Memorial's failure to offer direct testimony or proof on the exact loss of interest it suffered once it was determined when Taylor should have finished the project. Green Memorial never introduced an amortization table or testimony via a bank loan officer to show the amount of interest it paid on advances extended to Green Memorial during the life of the interim loan. However, as the court stated in *Harris Manufacturing Company* v. *Williams*, 164 F. Supp. 626 (1958), when the cause and existence of damages have been established by the evidence, recovery will not be denied merely because the damages are difficult to ascertain. In the instant proceeding, the jury was required to compute the interest damages from the terms of the interim finance note and the printout which reflected the activity on such note. The interim note was in the principal amount of $125,000 at 10% interest. Since this note was for construction, the principal amount was broken down and paid in varying amounts at different stages of construction. Accordingly, the amounts and dates of payments were set out in the printout which was in evidence and properly before the jury. Taking the terms of the note and payments reflected on the loan activity printout, it was certainly possible for the jury to calculate damages. For instance, let us consider the August 1, 1978 to January 4, 1979, time period we previously discussed. The printout reflects that the amount of loan proceeds extended by August 1, 1978, was no less than $63,000. If we were to compute interest damages on this loan amount, Green Memorial would have paid $2,589.04 in interest, basing the calculation on a 360-day year. Obviously, additional monies were loaned as the construction progressed to completion and, given the August 1 to January 4 date, the interest damages would necessarily have been in excess of $2,500.

The purpose of illustration is not meant to imply that August 1, 1978 to January 4, 1979 was the period used by the jury in rendering its decision. However, our example certainly serves to illustrate the method by which interest

damages could be calculated once the jury decided when the project should have been completed by Taylor. The evidence presented the jury offered more than one choice in project completion dates and, in turn, the choice made would necessarily vary the amount of interest to be calculated and paid by Green Memorial. These variables, however, are not based on speculation or conjecture. Rather, there were various dates from which the jury could choose and they were all based on evidence presented at trial, albeit from conflicting testimony rendered by opposing parties and witnesses. Although we might agree the interim loan interest could have been presented to the jury in a form easier to apply once the jury decided Taylor had delayed performance of the parties' contract, for a designated period of time, we still are of the opinion the evidence was sufficient for the jury to make the verdict it rendered.

On its cross-appeal, Green Memorial is met with some of the same problems which we have discussed in the issue raised by Taylor. In sum, Green Memorial asks us to find the damages awarded by the jury were inadequate as a matter of law. Again, a review of the entire record reflects the conflicting evidence and countervailing arguments of the parties, all of which were clearly before the jury. The opposing parties offered extensive testimony and other evidence which afforded the jury the opportunity to accept some items listed as damages and to reject other items. It is the province of the jury to pass on the weight of the evidence, and when the sufficiency of the evidence is challenged on appeal, we will not disturb the finding of the jury if there is any substantial evidence to support it. *Guerin Contractors, Inc.* v. *Reaves*, 270 Ark. 710, 606 S.W.2d 143 (Ark. App. 1980). It is not this Court's function to reconstruct how the jury reached its verdict so long as the verdict was based on substantial evidence. Our study of the record shows the jury verdict was consistent with the evidence before it.

Affirmed.