2010 Ark. App. 179

**Kevin and Deborah CRUMPACKER, Appellants**

v.

**GARY REED CONSTRUCTION, INC., and Gary Reed, Individually, Appellees.**

**No. CA 09–656.**

Court of Appeals of Arkansas.

Feb. 24, 2010.

Stephanie Harper Easterling, Hayes, Karber, Alford & Smith, PLLC, Fort Smith, for Appellant.

James Clifton Mainard, Ozark, for Appellee.

**JOSEPHINE LINKER HART, Judge.**

Kevin and Deborah Crumpacker appeal from the grant of summary judgment in Franklin County Circuit Court in favor of their building contractor, Gary Reed Construction, Inc., and Gary Reed individually (hereinafter Reed). On appeal, the Crumpackers argue that the circuit court erred in granting summary judgment where there were issues of material fact concerning whether Reed breached the implied warranty of habitability for the house that he constructed for the Crumpackers.[1] We agree and reverse and remand.

---

1. Although the Crumpackers list three separate points, the first point only sets forth the standard of review. Further, the second point ostensibly dealing with "breach of con-

Most of the key facts are not disputed. On June 29, 2003, the Crumpackers entered into an agreement with Reed for him to build them a new home for $150,000. Even prior to the Crumpackers moving into the new dwelling, they noticed that there were cracks in the brick veneer. In March 2004, they notified Reed of this problem. In May 2004, the Crumpackers moved into the residence. The problems worsened. Cracks appeared in the walls, windows could not be opened, and many doors could not be closed. Reed inspected the residence. Although Reed disputes whether it was at his direction, the Crumpackers attempted to alleviate the settling problem by installing a French drain, which they tied into the gutter system. However, the settling problem continued to worsen. In 2005, Reed poured concrete underneath the footings, but this attempted cure only seemed to add to the problem. Ultimately, a third party was hired by the Crumpackers to repair the settling problem. That company charged $26,550.

On March 29, 2007, the Crumpackers filed suit against Reed, alleging breach of contract and breach of the implied warranty of habitability. They sought reimbursement for the home repairs. Reed subsequently moved for summary judgment, asserting that the Crumpackers' case was time-barred and that the Crumpackers "can point to no specific fact or set of facts, which would serve to establish liability on the part of either Defendant for their breach of the oral contract entered into between the parties." Reed attached Kevin Crumpacker's deposition in which he admitted that he did not know what "Reed did or failed to do that rendered [his] house uninhabitable or constituted an unworkman-like manner of doing whatever he did," and that he had no evidence concerning what caused the settling problem.

The trial court found that the Crumpackers' case was not time-barred; however, it granted summary judgment. The trial court specifically found that the motion should be granted because "the Plaintiffs' Complaint and other documents considered in conjunction therewith fail to demonstrate that the Defendant did, or failed to do anything which led to the alleged defects in the Plaintiffs' residence and the damages they have sustained, and accordingly there is a simple lack of proof of causation offered by the Plaintiffs."

■■■ Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Sykes v. Williams*, 373 Ark. 236, 239–40, 283 S.W.3d 209, 213 (2008). We will reverse a grant of summary judgment when the trial court makes an erroneous conclusion of law. *See Southeastern Distributing Co. v. Miller Brewing Co.*, 366 Ark. 560, 237 S.W.3d 63 (2006).

■■■ The Crumpackers argue that the trial court erred in finding that Reed was entitled to summary judgment as a matter of law because proof of causation is not an element of a claim for breach of contract or breach of implied warranty of habitability. We agree.[2]

tract" and the third point, which purports to specifically address Reed's alleged breach of the implied warranty of habitability, are essentially parts of the same argument inasmuch as the Crumpackers allege that Reed breached the contract because of the breach

of the warranty of habitability. We thus will address these three points as a single argument.

2. The dissent criticizes us for basing our decision "on a straight contract theory." We are

Implied warranties of habitability, sound workmanship, and proper construction are given by operation of law and are intended to hold a builder-vendor to a standard of fairness. *Bullington v. Palangio,* 345 Ark. 320, 45 S.W.3d 834 (2001). Cause is a tort element that has no relevance in a contract-based cause of action arising out of a guarantee of specific favorable results. *See Haase v. Starnes,* 323 Ark. 263, 915 S.W.2d 675 (1996). In *Graham Construction Company, Inc. v. Earl,* 362 Ark. 220, 208 S.W.3d 106 (2005), the supreme court rejected the notion that a plaintiff in a breach-of-warranty case was obligated to prove how a defendant's workmanship or materials had caused the damages. The *Earl* court stated that the plaintiff need only prove that the condition of the dwelling breached the warranty, and at that point, the burden shifted to the defendant builder to defend by proving "there was no warranty, that he was not responsible under the warranty due to defective materials or specifications supplied by the plaintiff, or for some other reason." 362 Ark. at 229, 208 S.W.3d at 112.

Here, the Crumpackers presented evidence that the house that Reed built was defective. They also presented evidence that they sustained monetary damages as a result of those defects. Nothing more was required of them to withstand a motion for summary judgment. Accordingly, we hold that the trial court erred in granting summary judgment in that Reed was

not entitled to that relief as a matter of law.

Reversed and remanded.

PITTMAN, ROBBINS, and KINARD, JJ., agree.

GLADWIN and GRUBER, JJ., dissent.

ROBERT J. GLADWIN, Judge, dissenting.

The trial court did not err in granting summary judgment in favor of the appellees, and, therefore I dissent.

Appellants filed suit against appellees alleging that their house had significant foundation problems and that the brick was cracking. They alleged that appellees' contract included an implied warranty of habitability and an implied warranty that the home would be built in a workmanlike manner and that these warranties were breached. Appellants specifically alleged that the home was built in a defective manner.

Appellees filed a motion for summary judgment claiming that the statute of limitations barred appellants' suit and that appellants' deposition testimony could point to no specific facts establishing liability on appellees' part. The trial court granted summary judgment in favor of appellees. The majority holds that the mere fact that there were problems with appellants' house is sufficient to send this case to the jury. They base this on a

---

compelled to do so, because those theories were the only ones set forth in the Crumpackers' complaint. We can perhaps understand the dissent's confusion inasmuch as certain elements in a breach-of-warranty case are virtually identical to a strict-liability case. *See Higgins v. General Motors Corp.,* 287 Ark. 390, 699 S.W.2d 741 (1985). However, no matter how similar certain elements in a breach-of-warranty claim are to a cause of action alleging strict liability, they are not all the same. *O'Mara v. Dykema,* 328 Ark. 310, 942 S.W.2d

854 (1997). We do note that at least one commentator has stated that a cause of action for breach of warranty grew out of an action sounding in tort. J.B. Ames, *History of Assumpsit,* 2 Harv. L.Rev. 1, 8 (1888). Nonetheless, the dissent is mistaken in its belief that elements of a case that sounds in ordinary negligence or professional malpractice should be grafted onto a case that, under today's law, is firmly rooted in causes of action for breach of warranty and breach of contract.

straight contract theory, which is not applicable in this case based upon the pleadings. That appellants allege that the house was built in an unworkmanlike manner necessarily requires some evidence of a standard of care that was breached, requiring an answer to the question: "What exactly is an unworkmanlike manner?"

In the case of *Wawak v. Stewart*, 247 Ark. 1093, 449 S.W.2d 922 (1970), the Arkansas Supreme Court first established an implied warranty of habitability. In that opinion Justice George Rose Smith described cases from other state courts recognizing what was then a relatively new theory of law. Our supreme court held that [the court] had "no hesitancy in adopting the modern rule by which an implied warranty may be recognized in the sale of a new house by a seller who is also a builder." *Id.* at 1100, 449 S.W.2d at 926. This warranty has been recognized in subsequent cases. *See Coney v. Stewart*, 263 Ark. 148, 562 S.W.2d 619 (1978); *Daniel v. Quick*, 270 Ark. 528, 606 S.W.2d 81 (1980); *Pickler v. Fisher*, 7 Ark.App. 125, 644 S.W.2d 644 (1983).

In *O'Mara v. Dykema*, 328 Ark. 310, 942 S.W.2d 854 (1997), our supreme court came close to setting out a standard for an implied warranty of habitability. The court stated:

> In *Wawak v. Stewart*, 247 Ark. 1093, 449 S.W.2d 922 (1970), we adopted the view that by operation of law a builder-vendor gives implied warranties of habitability, sound workmanship and proper construction. The implied warranty does not rest upon an agreement, but arises by operation of law and is intended to hold the builder-vendor to a standard of fairness. *Wingfield v. Page*, 278 Ark. 276, 644 S.W.2d 940 (1983).

*Id.* at 318–19, 942 S.W.2d at 859.

The supreme court has noted that an action for breach of warranty has "been termed a hybrid of tort and contract." *Bankston v. Pulaski County Sch. Dist.*, 281 Ark. 476, 479, 665 S.W.2d 859, 861 (1984) (citing William L. Prosser, *Handbook of the Law of Torts* § 95 (4th ed.1971)). The *Bankston* court further pointed out that, in order to determine whether an action sounds in contract or tort, the trial court may look to the nature of the damages prayed for. Where, on the facts, the action may sound in either contract or tort or in both, the court itself will often seek to determine the real character of the action. *L.L. Cole & Son, Inc. v. Hickman*, 282 Ark. 6, 665 S.W.2d 278 (1984).

The standards of sound workmanship and proper construction necessarily require some proof that the builder-vendor did not follow the industry standard. The present case is completely void of any such evidence.

In *Wingfield v. Page*, 278 Ark. 276, 644 S.W.2d 940 (1983), our supreme court stated the following:

> The potential remedies of a purchaser of residential property against a builder-vendor have undergone changes in recent years. The remedies come within the common law doctrines of tort and contract and the statutory doctrine of strict liability. As a matter of public policy the rule of caveat emptor has been significantly diminished.

> Within the purview of contract law the purchaser may seek damages for breach of express or implied warranties. The implied warranty does not rest upon an agreement in fact, as does the express warranty, but arises by operation of law and is intended to hold the builder-vendor to a path of fairness. Under certain conditions the purchaser may assert mistake, misrepresentation or fraud and

deceit, repudiate the contract and seek rescission.

Under the law of torts the purchaser may state a cause of action for negligence or if the builder-vendor acts with actual knowledge and an intent to deceive, may file a tort suit for fraud and deceit. Misrepresentation may also be the basis of a tort action.

Finally a purchaser may seek relief under the statutory remedy of strict liability which imposes liability, as a matter of public policy, on the party best able to shoulder it. *See Defective Housing: Remedies Available to the First and Subsequent Purchasers*, 25 So. Dakota L.Rev. 333 (1980); *Breach of Warranty in the Sale of Real Property: Johnson v. Healy*, 41 Ohio St. L.J. 727 (1980).

*Id.* at 279, 644 S.W.2d at 942.

The majority cites *Graham Construction Company, Inc. v. Earl*, 362 Ark. 220, 208 S.W.3d 106 (2005), for the proposition that a plaintiff in a breach-of-warranty case was not obligated to prove how a defendant's workmanship or materials had caused the damages. The majority oversimplifies the *Graham Construction* case, which is easily distinguished from the present appeal. In *Graham Construction*, the court found that the builder gave both an express warranty and an implied warranty when he assured the owner of the house that his roof would not leak. *Id.* Further, the court held that the contractor should have known about the unsuitability of the owner's plans and that the builder's warranties took precedence over the owner's implied warranties of his materials, plans and specific actions. *Id.* Finally, *Graham Construction* dealt with the addition of a roof over a pool, not the construction and sale of a new home by the builder-vendor, which raises the implied warranty of habitability. *Id.*

The majority has established a strict-liability standard without appellants pleading strict liability. By allowing appellants to simply plead that the house was built in an unworkmanlike manner, without requiring any proof, the majority makes all builder-vendors insurers for any alleged defect in a newly constructed home, whether the defect was a result of the builder-vendor workmanship or another cause such as faulty materials or geological movements.

The pleadings in this case sound in tort rather than contract. Although I fully agree with the principle expressed in *Wawak*, that the builder-vendor impliedly warrants new construction, I simply believe that appellants must present evidence beyond the fact that the house was built and there is a defect. If residential contractors are to be held to a strict liability standard it should be established by the legislature, not by this court.

GRUBER, J., joins.